[Cite as *State v. Walker*, 2011-Ohio-6645.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96662**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL WALKER

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-538901

**BEFORE:** Keough, J., Kilbane, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 22, 2011

**ATTORNEY FOR APPELLANT**

Laura Kramer Rubadue
701 City Club Building
850 Euclid Avenue
Cleveland, OH 44114-3358

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Scott Zarzycki
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Michael Walker appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of kidnapping, rape, sexual battery, and gross sexual imposition. He argues there was insufficient evidence to support his convictions. For the reasons that follow, we affirm.

I

{¶ 2} In July 2010, Walker was indicted for kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification, rape in violation of R.C. 2907.02(A)(2), sexual battery in violation of R.C. 2907.03(A)(5), and gross sexual imposition in violation of R.C. 2907.05(A)(1). All counts contained sexually violent

predator specifications.   Walker waived a jury trial regarding the sexually violent predator specifications.

**{¶ 3}**   The victim, S.S.,[1] was born on December 12, 1991.   She testified at trial that she was four years old when she moved to Cleveland to live with her aunt, Soncha Shipman, after her mother died.   Shipman, who eventually adopted S.S., married Walker when S.S. was in the fifth or sixth grade, and they lived together in a house in Cleveland.  In 2006, when she was 14 years old, S.S. alleged that Walker had inappropriately touched her.    As a result, she was placed in a foster home located just around the corner from where she lived with Shipman and Walker; she was eventually reunited with them in July 2007.

**{¶ 4}**   S.S. testified that at approximately 11:30 p.m. on January 27, 2008, she was sleeping on the couch in the living room with her four-year-old sister while Shipman and Walker were upstairs.   S.S. testified that Walker came downstairs, picked up her sister, and carried her upstairs. She said he then came back downstairs, removed her covers, and began touching her on her lower back and buttocks area.   S.S., who was 16 years old at the time, testified that she told Walker  "no," but he continued touching her and then performed oral sex on her.   S.S. testified that she asked Walker to stop and "kind of pushed him away," but he continued what he was doing.

---

[1]S.S. is identified only by her initials in accord with this court's policy not to identify minor victims of sexual abuse.

**{¶ 5}** According to S.S., Walker then heard Shipman getting ready to come down the stairs, so he stopped what he was doing and went up the stairs to meet her. When Shipman asked Walker what was going on, he told her that he had been cleaning the kitchen. Shipman came downstairs, looked in the kitchen, and then walked over to S.S., lifted the cover, and saw that her pajama and underpants were pulled down to her ankles. S.S. testified that Shipman asked her what was going on and she replied that Walker "was touching her again." Shipman and Walker then went upstairs to talk.

**{¶ 6}** S.S. testified that as she waited downstairs, she texted her best friend and told her what had just happened. S.S.'s friend told her aunt, Angelica Weaver, who then picked up S.S. and brought her to her home, where she called the police. The police arrived, took a statement, and then followed Weaver and S.S. to the hospital, where medical personnel conducted a sexual assault examination and collected S.S.'s underwear.

**{¶ 7}** Weaver confirmed that S.S. came to her as a foster child in February 2006 after an allegation of sexual abuse in her home and remained with her until July of 2007, when she was reunited with her family. Weaver testified that at approximately 1 a.m. on January 27, 2008, she received a message from her niece that S.S.'s stepfather had "touched her again." She immediately picked up S.S., who Weaver described as "upset and crying," brought her home, and called the police. She stayed with S.S. at the hospital until Shipman arrived at approximately 4 a.m. After her release from the hospital, S.S.

lived in a group home, then with her grandmother, and eventually returned to live with Weaver.

{¶ 8} Shipman testified that she had raised S.S. since she was four years old. She recalled that S.S. was removed from the home in 2006 due to allegations of sexual abuse by Walker, but stated that she and Walker underwent counseling and were eventually reunited with S.S.

{¶ 9} Shipman recalled waking up at approximately 2:00 a.m. on January 27, 2008, and going downstairs, where she saw S.S. sleeping on the couch and Walker in the kitchen doing dishes. Suspicious as to why Walker would be doing dishes at 2 o'clock in the morning, she walked over to the couch, removed the blanket that was covering S.S., and saw her pajama pants and underwear around her ankles. When she asked S.S. what was going on, S.S. told her that Walker was touching her. Shipman testified that she then went upstairs to confront Walker, who had gone upstairs. Shipman said that she was upstairs for some time and did not realize that S.S. was gone until someone from the hospital called at approximately 4:00 a.m.

{¶ 10} The police subsequently obtained buccal swabs from Walker for DNA testing. Christopher Smith, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation identified the presence of amylase, an enzyme found in saliva, on S.S.'s underwear and labia swabs. Shawn Weiss, a representative from LabCorp, testified that he used two types of DNA testing and found profiles consistent with S.S. and Walker on the underwear and labia swabs.

{¶ 11} Walker testified in his own defense and denied the allegations. He testified that S.S. had fabricated the allegations to get back at Shipman and explained that S.S. must have picked up his saliva on her underwear from sitting on the couch because he "slobbers" when he sleeps on the couch.

{¶ 12} The jury found Walker guilty of all counts as indicted, and the trial court subsequently found him guilty of the sexually violent predator specifications and to be a sexually violent predator. The court sentenced him to ten years incarceration on Count 1 (kidnapping), life in prison with parole eligibility in ten years on Count 2 (rape), and 17 months in prison on Count 4 (gross sexual imposition). The State elected that Count 3 (sexual battery) merge for sentencing with Count 2 (rape).

## II

{¶ 13} The caption of Walker's first assignment of error asserts that his convictions were against the manifest weight of the evidence, but the substance of his argument regarding this assignment of error is that there was insufficient evidence to prove the element of force for his kidnapping, rape, and gross sexual imposition convictions.[2] Accordingly, we address the sufficiency of the evidence relating to Walker's convictions, not the manifest weight.

{¶ 14} The test for sufficiency requires a determination of whether the State presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471, 741 N.E.2d 594. On

---

[2]Walker does not challenge his conviction for sexual battery.

review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 15} R.C. 2905.01(A)(4), regarding kidnapping, provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to engage in sexual activity * * * with the victim against the victim's will."

{¶ 16} R.C. 2907.02(A)(2), regarding rape, provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 17} Finally, with respect to gross sexual imposition, R.C. 2907.05(A)(1) provides that, "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * the offender purposely compels the other person * * * to submit by force or threat of force."

{¶ 18} Walker contends that there was no evidence that he restrained S.S.'s liberty by force (kidnapping) or that he compelled her to submit by force (rape and gross sexual imposition) and, therefore, insufficient evidence to support his convictions.

{¶ 19} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A). However, "[w]ith the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size, and strength." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 58, 526 N.E.2d 304.

{¶ 20} This court has held that the manipulation of a sleeping victim's clothing in order to facilitate sexual conduct constitutes force under R.C. 2901.01(A)(1) even though such force requires only minimal physical exertion. See, e.g., *State v. Clark*, Cuyahoga App. No. 94207, 2010-Ohio-5010, ¶23, citing *State v. Sullivan* (Oct. 7, 1993), Cuyahoga App. No. 63818; *State v. Graves*, Cuyahoga App. No. 88845, 2007-Ohio-5430; *State v. Lillard* (May 23, 1996), Cuyahoga App. No. 69242. "[T]he use of the word 'any' in the definition recognizes there are different degrees of force. In the situation where the victim is sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act." *State v. Clark*, Cuyahoga App. No. 90148, 2008-Ohio-3358, ¶17.

{¶ 21} In this case, the State presented sufficient evidence of force to support Walker's convictions. S.S. testified that she and her sister were sleeping on the couch when Walker came downstairs, picked up her sister, and took her upstairs. She described her state of consciousness when Walker came back downstairs and removed the blanket over her as not being fully awake, but "kind of woken," in "mid-drift sleeping wake"

when he began to touch her and then performed oral sex on her. She testified further that she told Walker "no" and "kind of pushed him away," but he continued what he was doing despite her protests.

{¶ 22} Further, S.S. testified that she was only 16 years old at the time of the offenses and that Walker was her stepfather. She stated that she had been returned to the home in July of 2007, despite her allegation of sexual assault against Walker in 2006. And she testified that she did not believe her mother would protect her from Walker because when she had previously told Shipman what Walker had done, she "wouldn't listen."

{¶ 23} Viewing this evidence in a light most favorable to the prosecution, it is apparent that the State presented sufficient evidence of force. Walker's actions in moving the blanket and S.S.'s clothing to touch her buttocks and perform oral sex, despite her pleas for him to stop and her attempt to push him away, considered in light of S.S.'s age, relationship to Walker, and prior unresolved allegations of sexual abuse against him, satisfied the force element necessary to support his convictions.

{¶ 24} Appellant's first assignment of error is therefore overruled.

{¶ 25} In his second assignment of error, Walked argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal regarding the kidnapping count because the State failed to produce sufficient evidence that S.S.'s liberty was restrained by force. In light of our discussion above, this assignment of error is overruled.

{¶ 26} Appellant's second assignment of error is overruled.

Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Remanded for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, A.J., and
PATRICIA A. BLACKMON, J., CONCUR