[Cite as *In re A.K.*, 2012-Ohio-1767.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97188

---

## IN RE: A.K.
## A Minor Child

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-11101610

**BEFORE:** Celebrezze, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 19, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**
**STATE OF OHIO**

William D. Mason
Cuyahoga County Prosecutor
BY:    Amey L. Tucker
        Gittel Chaiko
        Richard Hanrahan
Assistant Prosecuting Attorneys
9300 Quincy Avenue
4th Floor
Cleveland, Ohio 44106

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, A.K., a minor, appeals from his delinquency adjudication and subsequent disposition in the Cuyahoga County Court of Common Pleas, Juvenile Division. After careful review of the record and relevant case law, we affirm.

{¶2} On January 31, 2011, appellant was charged in the juvenile court with rape, in violation of R.C. 2907.01(A)(1)(b); and kidnapping, in violation of R.C. 2905.01(A)(4), with a sexual motivation specification under R.C. 2941.147. Appellant, who had just turned 13 years old, denied the charges, and the trial court placed him on home monitoring pending adjudication and disposition.

{¶3} Appellant's bench trial commenced on May 9, 2011. At the adjudication proceeding, five-year-old victim, E.C., testified that the incident occurred at her grandmother Donna's house on January 29, 2011. E.C. visited there often and enjoyed spending time with her uncles, Kenny, age 26, and Kris, age 14, who lived in the house with Donna. Appellant regularly spent time at Donna's house, playing with her son, Kris

{¶4} On the evening of the incident, both appellant and E.C. were visiting at Donna's house. E.C. had gone to Donna's house with her mother in the afternoon and was permitted to spend the night when her mother decided to return home. Appellant arrived at the house at approximately 9:00 p.m. When he arrived, he went upstairs to

find Kris and E.C. in Kris's bedroom playing a video game. Thereafter, appellant, Kris, and E.C. watched a movie in Kris's bedroom.

{¶5} E.C. testified that when the movie ended, she went downstairs to sleep on the couch. At some point, she was awakened by appellant, who asked her to come back upstairs. Appellant guided her through Kris's bedroom and into a secondary room attached to Kris's bedroom. Once inside, appellant closed the door and told E.C. to remove her pants and underwear. E.C. testified that appellant pulled his pants down to his knees, laid on top of her, and "placed his ding-ding into her privacy." E.C. testified that she told appellant that he was hurting her, and he stopped and pulled his pants up.

{¶6} At that time, E.C. heard Kenny ask Kris where E.C. was, and Kris responded, "in the backroom with [appellant]." E.C. testified that Kenny walked into the room, turned on the light, and immediately ordered E.C. to go to her grandmother's bedroom and explain what she and appellant had been doing.

{¶7} Kenny testified that he was alone in his bedroom watching television when he noticed that it had became quiet in the house. Kenny stated that he left his bedroom to check on the younger children. He walked past Kris's room and noticed that Kris was alone, playing a video game. Kenny testified that he asked Kris where E.C. and appellant were; however, Kris, who is autistic, did not respond. Kenny proceeded to look for E.C. downstairs. When Kenny was unable to find E.C., he returned to Kris's room and went into Kris's secondary room, where he found E.C. and appellant sitting side-by-side on the floor. Kenny testified that appellant was fully clothed, sitting cross

legged, while E.C. was on her knees next to him, naked from the waist down. Kenny testified that E.C. looked shocked and that appellant stated, "What the fuck * * * I didn't do nothing." Kenny testified that he immediately instructed E.C. to go downstairs to tell her grandmother, Donna, what had happened.

{¶8} Donna testified that she was in her downstairs bedroom watching television when she heard a commotion upstairs, followed by someone yelling, "What are you doing?" or "What's going on?" Donna stated that she started to get out of bed when Kenny came in her room with E.C. Donna testified that when she asked E.C., "did [appellant] touch you?" initially E.C. "didn't say nothing." However, when Donna asked her again, E.C. responded by nodding her head "yes."

{¶9} Melissa, E.C.'s mother, testified that she learned of the incident from Donna, who called in the middle of the night to say that E.C. was found alone with appellant in Kris's secondary room with her pants and underwear off. Melissa stated that E.C. was initially reluctant to state what occurred, but eventually told Melissa that appellant touched her with his "pee pee." Subsequently, Melissa took E.C. to MetroHealth Medical Center for evaluation of her daughter's potential injuries.

{¶10} Dr. Susan Brown served as the physician at MetroHealth who conducted the sexual assault examination of E.C. and collected the evidence that was later submitted to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for scientific testing. Dr. Brown testified that E.C. stated that she was at her grandmother's house going to bed when appellant took off her pajama bottoms and underwear and put "his

thing" in her vagina. Dr. Brown testified that upon completing a physical examination of E.C., she noticed mild irritation of E.C.'s genital area. She explained that irritation would mean redness, irritated, or inflamed tissue.

{¶11} Lindsey Nelsen-Rausch, a BCI forensic scientist, testified that she tested clothing submitted in E.C.'s rape kit for sources of DNA. Nelsen-Rausch found that the underwear submitted in the rape kit tested positive for amylase, "which is a protein found in large quantities in saliva and smaller quantities of other bodily fluids." The amylase sample was forwarded to BCI forensic scientist, David Niemeyer, for further DNA testing. The amylase was found to be a DNA mixture consistent with contributions from E.C. and appellant. Niemeyer testified that "the proportion of the population that cannot be excluded as possible contributors to the mixture of DNA profiles on the swab is 1 in 2,506 unrelated individuals."

{¶12} Appellant testified on his own behalf, denying the allegations brought against him. He acknowledged that he and E.C. watched a movie in Kris's room. He testified that when the movie was over, Kris starting playing his video game and E.C. asked if she could play it. When Kris said no, E.C. asked appellant if she could use his portable video game device. Appellant testified that he said yes, but she would have to plug it in because the battery was dead. After a few minutes, E.C. disappeared into Kris's secondary room. Moments later, E.C. asked appellant to come into the room and he did. Appellant testified that he did not realize E.C. had her pants off because the lights were off in the secondary room. He testified that Kenny suddenly walked into the

room, turned on the light, and started screaming at them. Kenny then ordered E.C. downstairs. Appellant remained with Kris Appellant testified that he heard Donna ask E.C. if she had been touched, and she said no. He stated, "[E.C.] only said yes when [Donna] got on the phone with [Melissa]."

{¶13} At the conclusion of appellant's trial, the trial court found that the state had met its burden with respect to the rape and kidnapping charges and the sexual motivation specification and found appellant to be delinquent. At the dispositional hearing on July 14, 2011, appellant was committed to the Ohio Department of Youth Services for a period of 12 months. However, the trial court ordered the commitment "stayed" and placed appellant on probation with special orders to complete sex offender treatment and to appear for periodic review hearings before the court. The trial court also ordered that appellant have no contact with E.C.

{¶14} Appellant now brings this appeal, raising two assignments of error for review.

Law and Analysis

I. Manifest Weight of the Evidence

{¶15} In his first assignment of error, appellant argues that the delinquency findings on the rape and kidnapping counts are contrary to the weight of the evidence.

{¶16} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the

trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶17}   We are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.   The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).   "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶18} In the instant matter, appellant was adjudicated delinquent on charges of rape, in violation of R.C. 2907.01(A)(1)(b), and kidnapping, in violation of  R.C. 2905.01(A)(4), including a sexual motivation specification under R.C. 2941.147.   In order to secure a delinquency adjudication for rape, the prosecution was required to prove that appellant "engaged in sexual conduct with [the victim] who * * * is less than thirteen years of age, whether or not [appellant] knows the age of [the victim]."[1]   Moreover, in

---

[1] R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and

order to secure a delinquency adjudication for kidnapping with a sexual motivation specification, the prosecution was required to prove that appellant "removed [E.C.]," who was less than 13 years of age at the time, "from the place where [she] was found * * * to engage in sexual activity * * * with [E.C.] against [her] will" with a "purpose to gratify the sexual needs or desires of [appellant]."

{¶19} Appellant contends that "the weight the trial court accorded E.C.'s testimony was excessive." However, on review of the record, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the delinquency adjudication. At all times relevant to this case, E.C.'s allegations against appellant were consistent. E.C. testified that appellant came downstairs to the couch where she was sleeping and told her to go into an upstairs room. E.C. testified that, once inside the room, appellant shut the door, ordered her to take her pants and panties off, and penetrated her "privacy" with his "ding-ding." Moreover, E.C. testified that she told appellant "no" and that appellant would not allow her to exit the room when she asked if she could go back downstairs.

{¶20} The trial court, as trier of fact, was in the best position to assess the credibility of the witnesses and was free to believe E.C.'s testimony despite appellant's allegations to the contrary. The trial court heard all of the testimony at issue, including

female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

the conflicting testimony of E.C. and appellant, and made a determination that E.C. was more credible. The trial court elaborated, "[E.C. was] one of the better witnesses that I've had whether or not they're 5 or 25 or 50 years old. * * * I found her testimony to be forthright, honest and uncoerced."

{¶21} Deferring to the trial court's assessment of the credibility of the witnesses, as we must, we cannot say that the trier of fact lost its way and performed a miscarriage of justice in finding appellant delinquent of rape and kidnapping.

{¶22} Appellant's first assignment of error is overruled.

## II. Ineffective Assistance of Counsel

{¶23} In his second assignment of error, appellant argues that he received ineffective assistance of counsel based on his attorney's failure to mount a meaningful challenge to the five-year-old accuser's allegations where the evidence indicated that those allegations where tainted by outside influences.

{¶24} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, he must demonstrate that his trial counsel's performance was deficient. *Id*. at 687. If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id*. To show prejudice, appellant must establish there is a

reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to erode confidence in the outcome. *Id*. at 694.

**{¶25}** Appellant bases his claim of ineffective assistance of counsel on his trial counsel's failure to file a motion to suppress E.C.'s testimony. He contends that E.C.'s testimony was unreliable and was tainted based on the improper influence of authority figures.

**{¶26}** Failure to file a motion to suppress may constitute ineffective assistance of counsel if there is a "solid possibility" that the trial court would have suppressed the evidence. *State v. Pimental*, 8th Dist. No. 84034, 2005-Ohio-384. As discussed under the first assignment of error, appellant has failed to establish that E.C.'s testimony was unreliable. E.C.'s testimony was clear and concise, and we have no basis to conclude that her testimony was tainted or that she was coerced by her family to provide false testimony. Thus, filing a motion to suppress would have been futile. *State v. Thompson*, 8th Dist. No. 96929, 2012-Ohio-921. As such, defense counsel was not ineffective for failing to file such a motion.

**{¶27}** Furthermore, appellant's counsel did not provide deficient representation by failing to call an expert in the area of child memory and psychology. Ordinarily, the use of trial tactics does not constitute a denial of effective assistance of counsel. *State v. Briscoe*, 8th Dist. No. 77832, 2000 WL 1738361 (Nov. 22, 2000). Because calling

witnesses is within the realm of trial tactics, defense counsel did not have a duty to call an expert witness.

{¶28} As stated by this court in *State v. Goza*, 8th Dist. No. 89032, 2007-Ohio-6837, E.C. "was a very reliable witness, whose story remained unchanged throughout the whole ordeal.  It was not unreasonable for trial counsel to determine that an expert was not needed."  Therefore, the claim of ineffective assistance of counsel based on failure to call expert witnesses fails.

{¶29} Appellant's second assignment of error is overruled.

{¶30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR