[Cite as *State v. Giffin*, 2022-Ohio-4358.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

GEORGE A. GIFFIN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 CO 0028**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 20 CR 263

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino,* Prosecuting Attorney, *Atty. Tammie Jones,* Assistant Prosecuting Attorney*,* 135 S. Market St., Lisbon, Ohio 44432 for Plaintiff-Appellee and

*Atty. Wesley A. Johnston*, Marion Building, Suite 419, 1276 W. 3rd Street, Cleveland, Ohio 44113 for Defendant-Appellant.

Dated: December 1, 2022

**Robb, J.**

**{¶1}** Defendant-Appellant George Andrew Giffin[1] appeals after being convicted of gross sexual imposition in the Columbiana County Common Pleas Court. He argues his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. He also claims defense counsel was ineffective by deciding not to move for acquittal on venue or the victim's identity, by waiting to request discovery until three months after arraignment, by failing to challenge the competency of the child victim, and by failing to offer an expert on childhood memory. Lastly, he challenges his sentence as excessive. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

**{¶2}** On July 16, 2020, Appellant was indicted for one count of gross sexual imposition for having sexual contact with a child under the age of 13, a third-degree felony in violation of R.C. 2907.05(A)(4) (regardless of knowledge of age). It was alleged the sexual contact was a course of conduct continuing from January 2014 through October 2016, which covered years when the child victim was 6 to 8 years old. (10/14/20 Amended Indictment). The victim was 12 when she first disclosed the sexual abuse and was about to turn 14 when the charge was tried to a jury in March 2021.

**{¶3}** The victim testified Appellant was a cousin who asked to move into the basement of their house in Salem when she was six or seven years old. (Tr. 341-343). A few months after he moved in, he began touching her vagina on a regular basis. He would take her by the arm, lead her downstairs to his bedroom, and lay her down on his bed. (Tr. 344). The victim testified Appellant put his hand under the front of her clothing below the waist and touched her bare "private part" by moving his hand around. (Tr. 345-347, 366-367). She said this made her feel "uncomfortable." She said she cried and asked him not to do this. He said he would "make it worse" if she told anyone. (Tr. 347).

**{¶4}** The victim estimated this sexual contact thereafter occurred once per week for the remainder of the time Appellant lived in her house. (Tr. 343-344). She noted she was scared and her behavior changed in that she began hiding in her room. (Tr. 352-

---

[1] Appellant was born in 1994. His father has the same name and testified in this case.

353). She realized it was wrong when she got older. She finally disclosed the sexual assaults in May 2019, after hearing Appellant's father say Appellant was incarcerated due to an altercation with his father. (Tr. 350-351).

{¶5} First, the victim made a disclosure to her female cousin, who was close to her in age; she told her cousin that Appellant did something to her that he should not have. The victim said, on her cousin's advice, she then disclosed the sexual contact to Appellant's father, who was visiting the victim's mother. Appellant's father instructed the victim to tell her mother. (Tr. 335-339). She approached her mother, who was sitting by a campfire with other relatives, and sent her the following sequence of four texts: "You know George's son"; "Well"; "When I was 6 Andy did something"; and "He touched me somewhere he shouldn't have." These May 8, 2019 texts were admitted as evidence after a police officer identified the photograph he took of the mother's phone screen. (St.Ex. 1).

{¶6} The victim's female cousin confirmed she was the recipient of the victim's initial disclosure and she heard the victim make the disclosure to Appellant's father. (Tr. 238-241, 257). This witness also watched the victim text her mother at the campfire. (Tr. 242-243, 261).

{¶7} Appellant's father said the victim's mother was his cousin. He testified the victim was present when he told the victim's mother about his son being in jail due to charges he filed against his son after an April 2019 altercation. (Tr. 283-284). Appellant's father confirmed he was approached by the victim and her female cousin while at the victim's residence. When the victim began telling him Appellant touched her, he stopped her and instructed her to tell her mother. (Tr. 274). He said he did not encourage the victim to say negative things about his son, noting he agreed with the state's proposal to offer a plea to lesser charges in the case he initiated against his son. (Tr. 277-279).

{¶8} The victim's mother testified the victim looked scared while texting the messages disclosing the sexual assault. (Tr. 296). She said Appellant lived in their residence from 2014 through the spring of 2016. (Tr. 291, 302). During that period, he was an adult who paid rent for a bedroom in their basement. (Tr. 291-292, 312). She testified the victim was sometimes left alone in the house with Appellant. The victim's mother confirmed reporting to the police that the victim experienced certain behavioral

changes during the time period in question. For instance, the victim began locking her room at night, and her room started smelling like urine. (Tr. 301-302).

{¶9} The jury watched the video of the victim's June 12, 2019 interview with a social worker at the Child Advocacy Center at Akron Children's Hospital. (St.Ex. 2). The victim described the first incident, a later encounter when Appellant seemed more forceful in leading her to the basement, and the last incident where he spoke of experiencing one last time with her before he moved out.

{¶10} The interviewing social worker, the county caseworker, and the nurse practitioner testified about the following reasons for delayed disclosure: fear of not being believed or of negative reactions from others; desire to avoid disruptions in the family; personal or familial relationship with the perpetrator; threats; and confusion or not knowing it is wrong when young. (Tr. 187-189, 380, 404-405). The nurse practitioner also spoke of incremental disclosure. Additionally, she explained a victim might experience composite memory in cases where an event occurs frequently in the past and the victim eventually lacks memories of specific individual occurrences but has a composite memory of the circumstances surrounding all of the occurrences. (Tr. 405). She additionally noted it is common for a child to wet herself or to engage in improper hygiene after being sexually assaulted. (Tr. 402).

{¶11} Appellant testified in his own defense. He confirmed he moved in with the victim's family in early 2014 and moved out in the spring of 2016. (Tr. 437-438, 450-452). He said if the victim's parents left the house, then the victim's sister would babysit her. (Tr. 444). Appellant acknowledged the victim came to his room alone a few times; he said they would play a video game. (Tr. 446- 447). He testified the victim's accusations were false and disgusting. (Tr. 446).

{¶12} The jury found Appellant guilty as charged. The court sentenced him to 54 months in prison with five years of post-release control and informed him of his Tier II sex offender label. The within appeal followed.

ASSIGNMENT OF ERROR ONE:  SUFFICIENCY

{¶13} Appellant sets forth four assignments of error on appeal, the first of which alleges:

"[APPELLANT'S] CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE."

{¶14} Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In considering the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether any rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). The reasonable inferences to be drawn from the evidence are also evaluated in the light most favorable to the state. *State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999).

{¶15} An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). Sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶16} Appellant's sufficiency argument focuses on two issues: (1) the victim's identity at trial versus her initials in the indictment and (2) venue.

{¶17} First, Appellant complains the trial evidence related to a victim whose name did not match the initials "C.V." in the indictment where the victim was identified. Appellant contends there was insufficient evidence to show he committed gross sexual imposition *against the child named in the indictment*. He specifically does not take issue with an indictment's use of initials for a juvenile. *See, e.g., State v. Gomez*, 11th Dist. Ashtabula No. 2017-A-0002, 2017-Ohio-8146, ¶ 6-7, 27 (upholding the overruling of a motion to quash an indictment, which claimed the victim was not sufficiently identified by the use of initials and date of birth). Instead, Appellant protests the use of initials different from those matching the name of the juvenile discussed at trial. Appellant does not set forth an assignment of error on the adequacy of the indictment, but he notes the indictment must give notice of the crime charged and protect against double jeopardy issues.

{¶18} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." Crim.R. 12(C)(2). "The following must be raised before trial: * * * Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which

objections shall be noticed by the court at any time during the pendency of the proceeding) * * *." *Id.* Failure to do so "shall constitute waiver of the defense or objection." Crim.R. 12(H).

**{¶19}** There was no motion made or objection raised about the use of C.V. in the indictment. The child victim who testified at trial had a date of birth matching the one listed in the indictment for C.V. As the trial court explained to the jury, the use of the initials C.V. in the indictment represented the term "child victim." (Tr. 504-505).

**{¶20}** Defense counsel initially received discovery informally and thereafter received more discovery after a formal request. (10/20/20 Tr. 3-4); (11/4/20 Mot. for Discovery); (12/10/20 J.E. prohibiting counsel and Appellant from disseminating the DVD with victim interview). Notably, subpoenas *filed by the defense* in October 2020 contained the victim's full name. At a status hearing, the court addressed this fact and redacted the victim's name by changing it to her initials in the subpoena filings. (10/9/20 Tr. 2).

**{¶21}** On the morning of trial, defense counsel mentioned to the court the child's real name, acknowledged the obligation to maintain confidentiality, and asked if they would be using the child's real name during trial. (Tr. 132-133). The parties, the court, and the witnesses thereafter all used the child victim's full name. The state's closing argument pointed out C.V. was used to represent child victim, and the court explained this as well. (Tr. 466, 504-505). There was no objection to the closing argument or the jury instructions informing the jury that C.V. in the indictment referred to "child victim."

**{¶22}** It was clear the defense had no issue with the indictment, had notice and actual knowledge of the victim's identity before the March 30, 2021 trial, and suffered no prejudice. Moreover, the victim's name is not an element of the offense required for the indictment. Notably, the victim's date of birth was provided to show the age element. In some cases, the victim's name is never discovered, such as when a defendant's rape of an unidentified young child is discovered on video. The evidence sufficiently showed the child victim who testified was the victim of gross sexual imposition by Appellant during the date range alleged at a time when the child was well under the age of 13 (with a date of birth matching that in the indictment). Appellant's argument on the victim's initials not matching the initials C.V. in the indictment is without merit.

**{¶23}** On the issue of venue, Appellant points out no witness explicitly said the victim's residence was located in Columbiana County. A criminal defendant has the right

Case No. 21 CO 0028

to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Ohio Constitution, Article I, Section 10. *See also* R.C. 2901.12(A) ("The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and, except in cases of emergency under section 1901.028, 1907.04, 2301.04, or 2501.20 of the Revised Code, in the territory of which the offense or any element of the offense was committed."). The concept of being tried in the proper county involves the principle of venue (rather than subject matter jurisdiction). *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 19. The standard by which venue must be established is beyond a reasonable doubt. *Id.* at ¶ 19, 22. "If the state fails to produce evidence of proper venue, then the evidence is insufficient to sustain a conviction of such offense or offenses." *Id.* at ¶ 22.

**{¶24}** Sufficiency is a legal question, and venue can be addressed in a motion for acquittal. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 23 (a motion for acquittal under Crim.R. 29(A) is not limited to the material elements of the offense and may be granted if there is a failure of proof on venue); *Thompkins*, 78 Ohio St.3d at 386 (legal sufficiency is a question of law). This supports the decisions allowing judicial notice by a local trial judge as to a county venue issue in a jury trial. *See State v. Barr*, 158 Ohio App.3d 86, 2004-Ohio-3900, 814 N.E.2d 79, ¶ 25 (7th Dist.) (judicial notice on streets in a county could be taken in a jury trial); *State v. Bass*, 10th Dist. Franklin No. 81AP-999 (1982) (in a jury trial, judicial notice could be taken of all geographical matters of common knowledge and certain street addresses are a proper subject for judicial notice as to location within the county). "Trial courts have broad discretion to determine the facts that would establish venue." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 144.

**{¶25}** Contrary to Appellant's suggestion, a witness is not required to expressly testify the crime took place in the county of trial in order to establish venue. "Venue need not be proven in express terms; it may be established either directly or indirectly by all the facts and circumstances of the case." *Jackson*, 141 Ohio St.3d 171 at ¶ 144. *See also State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983) ("venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case").

**{¶26}** As the state points out, this court previously concluded: "In light of [the] testimony describing the intersections of streets and towns involved in the chase, we conclude that the state proved beyond a reasonable doubt the location of the violation and that the trial court did not abuse its discretion by taking judicial notice that the location of the offense was within Columbiana County." *Barr*, 158 Ohio App.3d 86 at ¶ 25. In that case, street names provided by a Leetonia police officer were sufficient to show venue was proper in Columbiana County. *Id.* at ¶ 23 (while noting this was not the best practice to establish venue)

**{¶27}** Here, the mailing address where the victim and Appellant lived at the time of the reported events was identified in the testimony presented at trial. The testimony of the victim and her cousin named the street where they lived in Salem, Ohio corresponding to the location of the sexual contact. (Tr. 235, 332). The victim's mother provided the specific street address in Salem where they lived when Appellant stayed with them. (Tr. 287). Appellant confirmed this address. (Tr. 439). A Salem police officer testified this was located "in the City of Salem." (Tr. 203). In addition, the assigned caseworker testified she worked for the *Columbiana County* Department of Job and Family Services, Children Services Division. (Tr. 149).

**{¶28}** Testimony that a certain locality's investigative body was assigned to the alleged crime can be used to establish venue. *See, e.g., State v. Curry*, 2d Dist. Greene No. 2012-CA-50, 2014-Ohio-3836, ¶ 23; *State v. Brown*, 7th Dist. Mahoning No. 03-MA-32, 2005-Ohio-2939, ¶ 81 (offense occurred near a specific address on Market Street and the Youngstown police officer arresting the defendant was sufficient for venue in Mahoning County); *State v. Norton*, 2d Dist. Greene No. 97 CA 112 (Dec. 11, 1998) (evidence that officers from the Greene County Sheriff's Department investigated a burglary in Bath Township was sufficient to prove venue in Greene County); *State v. Woodson*, 4th Dist. Ross No. 97-CA2306 (Feb. 11, 1998) (evidence that a Ross County deputy sheriff investigated a robbery committed in Bainbridge was sufficient to establish venue in Ross County).

**{¶29}** Notably, circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). For a sufficiency review, the evidence is evaluated in the light most favorable to the state and the question is merely whether "any" rational juror could have found the

contested element satisfied beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence presented here was sufficient to show venue was proper in Columbiana County, even if the procedure was not the best practice.

**{¶30}** Moreover, it has been observed a defendant who raises venue for the first time on appeal waives the right to challenge venue absent plain error. *Jackson*, 141 Ohio St.3d 171 at ¶ 142. *See also Headley*, 6 Ohio St.3d at 477 (although venue is not a "material element" of the offense charged, it is a fact that must be proven in a criminal prosecution *unless it is waived by the defendant*). This is different from a sufficiency review on the material elements of the offense, where a challenge below is not required for preservation. *Compare State ex rel. Whitt v. Harris*, 157 Ohio St.3d 384, 2019-Ohio-4113, 137 N.E.3d 71, ¶ 10 ("A criminal defendant who fails to object to venue at trial waives all but plain error") *to State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001) (the defendant did not waive an argument on the sufficiency of the evidence to prove a material element of the offense by failing to raise it at trial as the not guilty plea preserved the issue). "Although we speak in terms of whether the evidence was sufficient to establish venue (and sufficiency of the evidence on the material elements is not subject to waiver at trial), venue is not a material element of the case and the issue of venue can be waived." *State v. Price*, 7th Dist. Mahoning No. 14 MA 28, 2015-Ohio-1199, ¶ 37.

**{¶31}** The plain error doctrine requires a defendant to demonstrate an error which was obvious and which affected the outcome of trial. *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700 at ¶ 93, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). In addition, plain error is a discretionary doctrine an appellate court may choose to use but only with the utmost care in exceptional circumstances to avoid a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62, applying Crim.R. 52(B).

**{¶32}** Appellant did not challenge venue below. On appeal, Appellant does not claim the named street in the City of Salem is not in Columbiana County in order to support an argument on obvious error. He does not otherwise develop an argument as to how the geographic location issue was obvious. It is additionally pointed out there is no indication the result would have been different had counsel objected to venue. Furthermore, the geographic county knowledge dispute does not present exceptional

circumstances or a manifest miscarriage of justice to prompt our use of discretion in the event of an obvious and outcome determinative error. To recap, testimony clearly established the allegations took place at a specific street address in Salem, Ohio, which the responding Salem police officer testified was located in the City of Salem. Plus, the victim's case was assigned to and investigated by a Columbiana County caseworker. *See, e.g., Curry*, 2d Dist. No. 2012-CA-50 at ¶ 23; *Brown*, 7th Dist. No. 03-MA-32 at ¶ 81; *Norton*, 2d Dist. No. 97 CA 112; *Woodson*, 4th Dist. No. 97-CA2306. This assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO: EFFECTIVENESS OF COUNSEL

**{¶33}** Appellant's second assignment of error alleges:

"[APPELLANT] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL * * *."

**{¶34}** Ineffective assistance of counsel arguments require the defendant to demonstrate both deficient performance and resulting prejudice. *State v. Carter*, 72 Ohio St.3d 545, 557, 651 N.E.2d 965 (1995), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the performance was not deficient, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶35}** As to the deficiency prong of the test, the defendant must demonstrate counsel's representation fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Our review is highly deferential to counsel's decision-making, and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance considering the "countless ways to provide effective assistance in any given case." *Id.* at 142-143, quoting *Strickland*, 466 U.S. at 689.

**{¶36}** On the prejudice prong, Appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 142, quoting *Strickland*, 466 U.S. at 694. Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 142, fn. 1, quoting *Strickland*, 466 U.S. at 693. Prejudice from defective representation justifies reversal only where the results are unreliable or the proceeding was fundamentally unfair due to the

performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶37} Appellant sets forth four allegations of ineffective assistance of counsel. Initially, we address Appellant's reiteration of his arguments from the prior assignment of error. He argues counsel was ineffective by failing to file a Crim.R. 29(A) motion for acquittal on the issue of the victim's identity and venue. Defense counsel specifically informed the court he would not be filing a motion for acquittal. (Tr. 427).

{¶38} As set forth in the prior assignment of error, the state presented sufficient evidence the child who testified was the victim referred to in the indictment and her house (where the sexual contact took place) was located in the same county as the trial court. The failure to file a Crim.R. 29 motion for acquittal is not ineffective assistance of counsel where the evidence demonstrates reasonable minds could reach different conclusions on the contested item and thus such a motion would have been futile. *State v. Heckathorn*, 7th Dist. Columbiana No. 17 CO 0011, 2019-Ohio-1086, ¶ 34. ("criminal defense attorneys regularly move for acquittal as a matter of custom, but the failure to so move does not necessarily render trial counsel's performance deficient"). It was not deficient or prejudicial for defense counsel to refrain from moving for acquittal under the circumstances discussed in the prior assignment of error.

{¶39} Appellant also contends counsel failed to timely request discovery and claims this was deficient performance that prejudiced his defense by depriving him of time to prepare a defense. He states there was no valid reason for waiting three months after his August 2020 arraignment to file a discovery request.

{¶40} We initially note there is some indication of a strategy in the initial delay. The indictment originally listed a single date for which Appellant had an alibi. (7/16/20 Indict.); (10/13/20 Not. of Alibi). During that time, defense counsel specifically informed the prosecutor he would not be requesting discovery. (10/9/20 Tr. 3). Still, defense counsel met with the prosecutor and informally reviewed some discovery material. (10/20/20 Tr. 4). After the state amended the indictment to include a date range, defense counsel filed the formal discovery request. This occurred nearly *five months before* trial. No prejudice is apparent. Defense counsel's performance did not fall below an objective standard of reasonableness and there was no demonstrated prejudice in the timing of the discovery request.

Case No. 21 CO 0028

**{¶41}** Next, we address Appellant's contention defense counsel was ineffective for failing to challenge the competency of the victim under R.C. 2317.01. He claims she "repeatedly stated that she did not remember what was said or what occurred." (Apt.Br. 10). He emphasizes the victim was 6 to 8 years old at the time of the events at issue and says counsel should have objected to her testimony on competency grounds even though she was nearly 14 years old at trial.

**{¶42}** According to the cited statute: "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." R.C. 2317.07. Moreover, Evid.R. 601(A) states, "Every person is competent to be a witness except as otherwise provided in these rules." Division (B) then provides some disqualifications, including when the court determines that the person is "Incapable of understanding the duty of a witness to tell the truth." Evid.R. 601(B)(2) (eff. 7/1/20).

**{¶43}** The Supreme Court ruled: "a child witness who is ten years of age or older at the time of trial, but who was under the age of ten at the time an incident in question occurred, is presumed competent to testify about the event." *State v. Clark*, 71 Ohio St.3d 466, 471, 644 N.E.2d 331 (1994). The Court explained:

> Whether or not the testimony of one over the age of ten concerning an event which occurred before the age of ten is accurate is a credibility issue to be resolved by the trier of fact. Every credibility assessment hinges upon the perceived accuracy and truthfulness with which the testimony is given. As with any witness, opposing counsel will be given an opportunity to cross-examine the witness in order to challenge his or her ability to accurately recall the events. Therefore, once a child attains the age of ten, the presumption of competency created by Evid.R. 601(A) applies equally to that child witness as it would to any adult, regardless of when the events in question occurred.

*Id.* "The rule addresses competency as of the time of trial, not as of the time at which the incident in question occurred." *Id.* at 470-471 (when the former version of the rule mirrored the statute).

**{¶44}** During the exchange of discovery months before trial, defense counsel watched the video of the child's interview from the Child Advocacy Center. (12/10/20 J.E. as to the DVD). The child was twelve years old at the time of the interview and well spoken; she provided exact dates of recent and future events in her life. Her recitation of the sexual contact imposed upon her by Appellant was clear and concise. By the time of trial, the victim was almost fourteen years old.

**{¶45}** Contrary to Appellant's suggestion, the victim's trial testimony did not give rise to concerns over her competency merely because she could not remember exactly what her cousin asked her or precisely what she told Appellant's father at the time of disclosure or because she hesitated before testifying about the sexual contact. Rather, the victim competently testified about the sexual contact which occurred over many months. We also note the nurse practitioner explained the concept of composite memory. (When an event occurred frequently in the past, the victim might eventually lose the memory of each specific individual occurrence but maintain a composite memory of the circumstances surrounding all of the occurrences.)

**{¶46}** As she was not "under ten years of age" at the time she was presented as a witness at trial, R.C. 2317.01 was inapplicable unless she was of unsound mind. There is no indication of such mental state. Moreover, the victim did not "appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly" as set forth in R.C. 2317.01. Likewise, there was no indication the victim was "[i]ncapable of understanding the duty of a witness to tell the truth" under Evid.R. 601(B)(2). Accordingly, defense counsel was not deficient in failing to challenge her competency, and there is no reasonable probability such a challenge would have succeeded.

**{¶47}** Finally, Appellant briefly argues defense counsel was ineffective by failing to offer expert testimony to criticize the child's ability to remember events which occurred when she was six, seven, and eight years old. The state notes defense counsel engaged in cross-examination on the issue of her memory and points out it is common knowledge that memories fade over time.

**{¶48}** In general, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66, quoting *State v. Nicholas*, 66 Ohio St.3d 431, 436,

613 N.E.2d 225 (1993). The decision on whether to retain an expert is a matter of trial strategy. *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2001); *State v. Coleman*, 45 Ohio St.3d 298, 308, 544 N.E.2d 622 (1989). *See also State v. Knight*, 6th Dist. Erie No. E-21-017, 2022-Ohio-1787, ¶ 28-29 (appellant failed to establish defense counsel's performance was deficient simply because he did not move to retain an expert witness on the reliability of children witnesses); *In re A.K.*, 8th Dist. Cuyahoga No. 97188, 2012-Ohio-1767, ¶ 27 (counsel did not provide deficient representation by failing to call an expert in the area of child memory and psychology).

{¶49} Additionally, where proof outside the record would be needed to establish ineffectiveness on the lack of an expert, the claim is not reviewable on direct appeal. *See Hartman*, 93 Ohio St.3d at 299. The record does not show what a defense expert may have opined on the topic of this child's memory or on the topic of composite memory based on long-term sexual abuse that occurs in essentially the same manner every time. *See, e.g., Hunter*, 131 Ohio St.3d 67 at ¶ 66, 68 ("argument that defense experts were necessary to impeach the testimony of the state's experts is purely speculative"); *State v. Madrigal*, 87 Ohio St.3d 378, 390-391, 721 N.E.2d 52 (2000) (rejecting claim of ineffectiveness for counsel's failure to utilize an expert on eyewitness identification).

{¶50} Where the record does not indicate lacking testimony would be favorable, the appellant fails to demonstrate a reasonable probability the result would have been different. *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 118. *See also Knight*, 6th Dist. No. E-21-017 at ¶ 29; *State v. Taylor*, 2d Dist. Montgomery No. 23990, 2013-Ohio-186, ¶ 45 (failure to present expert testimony on the effect of crack cocaine on memory was not ineffective assistance of counsel). In other words, there is no indication that "the result of a trial was unreliable or the proceeding fundamentally unfair" due to the absence of a defense expert on a child's ability to remember having a trusted relative put his hand on her vagina on a regular basis for approximately two years while he lived in her house. *See Carter*, 72 Ohio St.3d at 558.

{¶51} The four allegations of ineffective assistance of counsel are without merit. Therefore, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR THREE: WEIGHT</u>

{¶52} Appellant's third assignment of error contends:

"[APPELLANT'S] CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION."

{¶53} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. Although the effect of the evidence in inducing belief is to be evaluated, weight of the evidence is not a question of mathematics. *Id.* A weight of the evidence review considers whether the state met its burden of persuasion (as opposed to the burden of production involved in a sufficiency review). *See id.* at 390 (Cook, J., concurring).

{¶54} When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387. A bench trial can be reversed on manifest weight grounds with the vote of two appellate judges, but where a charge was tried by a jury, only a *unanimous* appellate court can reverse on manifest weight of the evidence grounds. *Thompkins*, 78 Ohio St.3d at 389 (the power of the court of appeals to sit as the "thirteenth juror" is limited to preserve the jury's primary function of weighing the evidence), citing Ohio Constitution, Article IV, Section 3(B)(3).

{¶55} In weighing the evidence, Appellant points to a perceived discrepancy between the testimony of the victim's mother and the police officer. The victim's mother testified the child exhibited the following behavioral changes during the time Appellant lived with them from 2014 to 2016: she would lock herself in her room at night; she "distanced herself"; and her room often smelled like urine. (Tr. 301-302, 316). While noting this "made sense" in hindsight, the mother testified that she reported these changes in behavior to the police.

{¶56} The police officer's testimony confirmed this was reported to him. He additionally said the parents reported the child mentioned a reason for the locked door involved ghosts. (Tr. 203). Yet, the victim's mother did not recall the child referencing to

ghosts. (Tr. 305, 316). This potential memory lapse from the time of reporting almost two years before trial was not some major discrepancy. Furthermore, the officer said the parents (plural) made the report, which would have included the father, who did not testify. It was for the jury to resolve this matter and the issue of whether observed behavioral changes added weight to the child's allegations.

{¶57} Appellant suggests the victim was not credible because she responded to certain questions by saying she did not remember. For instance, she said she did not remember exactly what her cousin asked her after the disclosure or precisely what she told Appellant's father during the disclosure to him. (Tr. 337, 339). Appellant also points to the victim's testimony on the sequence of her disclosures versus her cousin's testimony on the sequence. The victim said she told her female cousin, then Appellant's father, and then her mother. The female cousin believed the victim spoke to her parents before she spoke to Appellant's father. (Tr. 241, 246, 256, 258). However, the cousin also remembered Appellant's father instructed the victim to tell her mother, and she seemed to acknowledge the disclosures might have taken place on the same day. (Tr. 242, 256, 262). In any event, this discrepancy on the sequence of the 2019 disclosures did not diminish the victim's testimony as to the 2014 through 2016 sexual contact.

{¶58} Next, the victim said she did not remember in response to the prosecutor asking what would usually happen after Appellant would put her on the bed and stand in front of her. (Tr. 345-346). However, she then explained how Appellant would put his hand on her vagina under her clothes and moved it around. (Tr. 345-347). She thereafter said she did not remember anything different about the final time Appellant touched her. (Tr. 348-349). She agreed it was "pretty much the same, every time." (Tr. 349). These instances of her answering that she did not remember did not render her testimony unbelievable. The trier of fact occupies the best position from which to judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶59} Appellant also states the victim did not seem to remember when the conduct occurred. However, as set forth supra in our Statement of the Case, the victim testified Appellant was a cousin who asked to move into the basement of their house in Salem when she was six or seven years old. Her testimony relayed that he began touching her vagina a few months after he moved in. He would regularly take her by the arm, lead her

downstairs to his bedroom, lay her down on his bed, put his hand under her clothing (in the front, below the waist), and touch her bare "private part" by moving his hand around. (Tr. 341-347, 366-367). She further said: this made her feel uncomfortable; she cried and asked him to stop; and he said he would "make it worse" if she told anyone. (Tr. 347). She estimated this sexual contact thereafter occurred once per week while he lived in her house. (Tr. 343-344). The victim's mother testified Appellant lived with them from 2014 until the spring of 2016. (Tr. 291, 302). Appellant's testimony confirmed the date range of when he lived with the victim's family. (Tr. 450-452).

{¶60} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *Hunter*, 131 Ohio St.3d 67 at ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury had the opportunity to watch and hear the victim as she testified and to screen for any indicators of untruthfulness. They also had the opportunity to watch Appellant testify while claiming the victim's accusations were false and disgusting. There is no indication the jury clearly lost its way and created a manifest miscarriage of justice by convicting Appellant of the sole count of gross sexual imposition. The evidence does not weigh heavily against the conviction. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR FOUR: SENTENCING</u>

{¶61} Appellant's fourth and final assignment of error alleges:

"THE COURT COMMITTED AN ERROR WHEN SENTENCING [APPELLANT] TO FIFTY-FOUR MONTHS IN PRISON."

{¶62} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

{¶63} The sentence shall be reasonably calculated to achieve the three overriding purposes in division (A), "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences

imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). To determine the most effective way to comply with the purposes and principles of sentencing in R.C. 2929.11, the court shall consider the factors in R.C. 2929.12(B)-(F), including the seriousness and recidivism factors. R.C. 2929.12(A) (and any other factors relevant to achieving the purposes and principles of sentencing).

**{¶64}** In felony sentencing, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). The court can vacate or modify a felony sentence if it clearly and convincingly finds: "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or] (b) That the sentence is otherwise contrary to law." *Id.*

**{¶65}** Appellant was sentenced to 54 months in prison, which is less than the maximum for a third-degree felony gross sexual imposition offense. R.C. 2929.14(A)(3)(a), citing R.C. 2907.05. Appellant suggests the sentence was clearly and convincingly contrary to law because the court failed to consider R.C. 2929.11 and 2929.12.

**{¶66}** However, at the sentencing hearing, the court specifically said it considered R.C. 2929.11 and 2929.12. Furthermore, the court discussed the purposes and principles of sentencing and the various seriousness and recidivism factors it found applicable. (Sent.Tr. 17-24). The court's sentencing entry also memorialized the court had considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. (4/2/21 J.E.). Nevertheless, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31 and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

**{¶67}** Appellant argues his sentence is excessive, disagreeing with the trial court's weighing of the purpose and principles of sentencing and the seriousness and recidivism factors. For instance, he contests the court's finding on a lack of genuine remorse, noting he maintained his innocence. He complains the court made an assumption the victim suffered psychological damage. He also claims his likelihood of recidivism is low, pointing

Case No. 21 CO 0028

out his only criminal record was the two misdemeanors resulting from the 2019 altercation with his father and it had been years since the last allegation of sexual contact with the victim.

**{¶68}** The statutes cited in subdivision (a) of R.C. 2953.08(G)(2) are not relevant to Appellant's sentence. For a time, this court proceeded under the following observation: "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. However, these ideas have since been declared dicta and rejected. *Jones*, 163 Ohio St.3d 242 at ¶ 28.

**{¶69}** The Supreme Court in *Jones* decided a reviewing court cannot use subdivision (G)(2)(a) of R.C. 2953.08 to review whether the record supports R.C. 2929.11 or R.C. 2929.12 findings as those statutes are not listed in (G)(2)(a). *Id.* at ¶ 27-29. Moreover, the "otherwise contrary to law" language in the sentencing review statute does not allow the appellate court to reverse by finding "the record does not support the sentence." *Id.* at ¶ 38. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42 ("R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry like the independent sentence evaluation" the Court conducts when reviewing a death sentence). *See also State v. Toles,* 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784 (affirming based on *Jones* where the defendant argued the record did not support certain findings).

**{¶70}** In any event, Appellant's sentence is clearly supported by the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. As for seriousness, the victim's young age could be viewed as having exacerbated the mental injury suffered due to the conduct of the offender. *See* R.C. 2929.12(B)(1). Merely because there was no specific diagnosis made or issues revealed by an expert does not mean it was improper to consider past and continuing psychological harm to the victim at sentencing. The testimony showed the victim did not feel safe in her own house while Appellant lived there and did not feel safe for years thereafter until she believed he was incarcerated (on another matter). As the trial court pointed out, she was

"a prisoner in her own home for two years," and her "innocence [was] robbed." (Sent.Tr. 18). The state also points to Appellant's early threat to make it worse if she told anyone.

**{¶71}** Furthermore, "[t]he offender's relationship with the victim facilitated the offense." *See* R.C. 2929.12(B)(6). He was allowed to move into her house when she was six years old; she described him as her cousin (he was the son of her mother's cousin). The court pointed out the child trusted him and did not initially "understand the wrongness of what was happening to her." (Sent.Tr. 19). The victim did not induce or facilitate the offense, the offender did not act under strong provocation, and there were no substantial grounds to mitigate the offense. *See* R.C. 2929.12(C)(1),(2),(4) (the existence of which could make an offense less serious).

**{¶72}** Appellant could argue he did not cause or expect to cause physical harm. *See* R.C. 2929.12(C)(3). Yet, a lack of genuine remorse is a factor making recidivism more likely. *See* R.C. 2929.12(D)(1). It was within the court's prerogative to find his expression of remorse at sentencing did not appear genuine. The court observed Appellant rolling his eyes during trial and did not believe he reached a stage of genuine remorse. (Sent.Tr. 21-22).

**{¶73}** As for criminal and adjudicatory history, Appellant had two 2019 misdemeanor convictions arising out of the altercation with his father; his juvenile record was not provided to the court. *See* R.C. 2929.12(D)(2). The court could rationally fear the circumstances were likely to recur. *See* R.C. 2929.12(D)(4) (recidivism less likely if committed under circumstances unlikely to recur). This factor is not specific to recurrence regarding the victim at issue but relates to recurrence in general. As the court pointed out, "a criminal record doesn't in itself reflect the complexity of what recidivism means" as there is also the matter of "the frequency of the abuse * * * occurring over and over and over again." (Sent.Tr. 20). As the state points out, although Appellant was charged with only one offense, this was not one single act but continued sexual contact for a period of two years.

**{¶74}** In sum, even if Appellant's general sentencing arguments were reviewable notwithstanding the *Jones* decision applying R.C. 2953.08(G)(2), the record supported the trial court's observations and sentence. As it was not clearly and convincingly contrary to law for the trial court to impose a sentence of 54 months in prison, this assignment of error is overruled.

**{¶75}** For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

D'Apolito, J., concurs.

[Cite as *State v. Giffin*, 2022-Ohio-4358.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**